2022 IL App (2d) 210493-U
No. 2-21-0493
Order filed January 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* S.S., W.L., M.L., N.R., I.G., and L.G., Minors | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Winnebago County<br><br>Nos.   18-JA-308<br>         18-JA-309<br>         18-JA-310<br>         18-JA-311<br>         18-JA-313<br>         18-JA-314<br><br>Honorable<br>Francis M. Martinez, |
| (People of the State of Illinois, Petitioner-Appellee, v. Maria S., Respondent-Appellant). | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Counsel's motion to withdraw is granted as there are no issues of arguable merit to be raised on respondent's behalf. Therefore, we affirm.

¶ 2    Respondent, Maria S., appeals from the trial court's ruling (1) that she was an unfit person under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020) (Act)) and (2) that the termination of her parental rights was in the best interests of six of her children: S.S., W.L., M.L.,

N.R., I.G., and L.G.[1] respondent's appointed appellate counsel has filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000), asserting that there are no issues of arguable merit to be raised on respondent's behalf.

¶ 3       In his motion, counsel states that he has reviewed the record and found no issue of arguable merit. We advised respondent that she had 30 days to respond to the motion. Respondent has filed a response, in which she argues that she complied with all of the Illinois Department of Children and Family Services's (DCFS) recommendations, and that many of the allegations pertain to her ex-husband Luis's new wife, whose middle name is Maria.

¶ 4       Counsel suggests five potential issues, two of which address the sufficiency of the evidence and three of which present procedural issues, but concludes that none have arguable merit. We agree.

¶ 5                          1. Sufficiency of the Evidence: Unfitness

¶ 6       Counsel first addresses the argument that the trial court's findings as to unfitness were contrary to the law or evidence presented at trial. Parental rights cannot be involuntarily terminated absent a finding by clear and convincing evidence that the parent is an "unfit person" as defined by section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). In the instant case it was alleged that respondent was an unfit person because she failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare pursuant to section 50/l(D)(b) (750 ILCS 50/1(D)(b) (West 2020)) (count 1); failed to make reasonable efforts to correct the conditions that caused the children to be removed during a nine-month period after the adjudication of neglect

_____

[1] Respondent had two other children, E.G. and A.M., who were placed in the custody of their fathers. These two children were not the subject of this appeal.

pursuant to section 50/1(D)(m)(i) (750 ILCS 50/1(D)(m)(i) (West 2020)) (count 2); and failed to make reasonable progress toward the return of the children to her during a nine-month period after the adjudication of neglect pursuant to section 50/1(D)(m)(ii) (750 ILCS 50/1(D)(m)(ii) (West 2020)) (count 3).[2] The applicable nine-month periods stated in the motions were from June 18, 2019, to March 17, 2020, and February 10, 2020, to November 9, 2020.

¶ 7       The State filed its initial neglect petitions on September 17, 2018, alleging that the children were neglected minors as their environment was injurious to their welfare in that respondent had prior indicated reports for neglect and had mental health problems which prevented her from properly parenting the children.

¶ 8       A shelter care hearing took place on October 17 and 18, 2018, after which the trial court found probable cause that the children were neglected, but not an immediate and urgent necessity to remove them from respondent's care.

¶ 9       On January 10, 2019, the State filed amended neglect petitions adding an additional count which overlapped with the allegations in the initial petition, and which also included counts alleging that two of the children required mental health treatment which respondent had failed to provide. Additionally, N.R.'s neglect petition alleged that he had been educationally neglected.

¶ 10      The impetus for the DCFS investigation which ultimately led to the neglect and termination procedure was a call to DCFS's hotline from a psychic who respondent had consulted because she had been receiving messages that told her to leave her four oldest children at an unknown address in Machesney Park which did not exist. However, respondent claimed that these were dreams she had asked her psychic to interpret.

---

[2] In the petition counts 2 and 3 are mislabeled as counts 3 and 4 respectively.

¶ 11    Another shelter care hearing took place on January 16, 2019, after which the trial court found probable cause that the children were neglected, and an urgent and immediate necessity that they be removed from respondent's care. Respondent had been previously diagnosed with post-traumatic stress disorder (PTSD), and the trial court emphasized that the main concern regarding respondent's fitness to care for her children stemmed from her mental health issues and failure to demonstrate that she was seeking help for them.

¶ 12    M.L., N.R., I.G., and L.G. were placed with respondent's sister, Cristal T., and her fiancé Mitchell Z. S.S. and W.L. were placed with Angelica and Maynor F.

¶ 13    As part of her service plan, respondent was required *inter alia* to undergo a psychological evaluation to determine the nature of her mental health issues and formulate a treatment plan, participate in "visit coaching" sessions, and to submit to drug tests.

¶ 14    The trial court held permanency reviews on November 12, 2019, June 11, 2020, and November 9, 2020, with the goal to return to home. After the November 9, 2020, review, the trial court changed the goal to substitute care pending termination of parental rights. The State filed petitions to terminate respondent's parental rights on January 11, 2021. The trial held hearings on unfitness on February 19, April 9, May 6, 2021, June 18, 2021.

¶ 15    According to the permanency hearing reports, family service plans, and the testimony of Chloe Howaniec and Andrea Hernandez from Children's Home and Aid Society, there were several issues regarding respondent's participation in her service plan. The agency had increasing difficulty communicating with and coordinating services for respondent. Respondent would frequently not respond to communications, cancel or fail to appear at scheduled meetings and visitations, fail to provide requested documentation regarding her employment and mental health treatments, and show up unannounced at foster parents' homes or agency facilities. During the

relevant time period, respondent was traveling back and forth between Rockford and Waukegan for work, often without informing the agency where she was. She reported living in her car in Waukegan in order to work various jobs, many of which could not be verified. The agency reported that respondent became increasingly confrontational with its workers.

¶ 16 With regard to her recommended mental health services, respondent was reluctant to provide DCFS with the necessary releases to enable her to undergo the recommended psychological evaluation. Respondent likewise refused to participate in any services other than those provided by Arden Shore in Waukegan. Even then respondent's participation in those services was less than satisfactory, with respondent initially attending eight sessions and missing six. Respondent finally submitted the necessary releases and completed the recommended psychological evaluation on June 24, 2020, and she was diagnosed with schizoaffective disorder. As such, it was recommended that respondent complete a psychiatric assessment and medication management. Respondent refused to do so, claiming that the diagnosis was incorrect, and that the diagnosis actually applied to her ex-husband Luis's new wife, whose middle name was also Maria. Respondent claimed that several of the agency's reports actually pertained to this "Maria" and not to her, though this was not the case.

¶ 17 Respondent also failed to consistently complete the random drug tests prescribed by the service plan, though the ones she did complete all came up negative with the exception of a June 24, 2020, test which was positive for THC. Respondent claimed she had a medical marijuana card, but she never produced one.

¶ 18 Based on these factors, and on respondent's long history of DCFS involvement, the trial court found respondent unfit to care for the children on July 16, 2021.

¶ 19 Counsel maintains that in light of the evidence presented, the trial court's findings of unfitness were supported by clear and convincing evidence and no meritorious argument can be advanced to the contrary. Counsel also correctly notes that "a single alleged ground for unfitness is sufficient to terminate a parent's rights where it has been established by clear and convincing evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 363 (2005).

¶ 20 In her response to appointed appellate counsel's motion respondent argues that the diagnosis of schizophrenia actually applied to her ex-husband's new wife whose middle name was Maria, and that she has completed everything that DCFS had asked her to do. However, there is no evidence in the record which supports respondent's assertion that the psychological evaluation diagnosing her with schizoaffective disorder was for anyone other than her.

¶ 21 With regard to Respondent's assertion that she complied with all of DCFS's instructions, that assertion is belied by the evidence. It could be argued that some of the delay in respondent's services was partially attributable to matters beyond her control. For instance, her psychological evaluation was scheduled for March 27, 2020, but was cancelled due to the Covid-19 pandemic as the psychologist was no longer taking appointments. Likewise, respondent's failure to participate in visitation with S.S. and W.L. was due in part to an order of protection obtained by foster parents Angelica and Maynor F. Further, her failure to participate in some of the random drug tests was due to her being unavailable as she was working or living in Waukegan at the time.

¶ 22 However, but for her actions, these delays could have been avoided. Had she provided the necessary release, her psychological evaluation could have been completed well before the pandemic, and had she kept DCFS informed of her whereabouts, she would not have had to miss the drug tests.

¶ 23    Similarly, respondent made some efforts and progress towards completing the recommended services. She completed a YWCA parenting class, and Raul Bravo, who was respondent's counselor at Arden Shore, testified that as of May 2020, respondent had been consistently attending sessions and had made progress towards recognizing healthy relationships. However, Bravo also testified that respondent was not yet ready to address her underlying trauma or her children and the DCFS case.

¶ 23    In spite of this, after examining the record, we agree with counsel that in light of respondent's failure or refusal to participate in all of the recommended services, and the lack of meaningful progress towards addressing the mental health issues which prevented her from being able to properly care for her children, no issue of arguable merit exists as to unfitness.

¶ 24                    2. Sufficiency of the Evidence: Best Interest

¶ 25    As to the trial court's best interest finding, at this stage of a termination proceeding the trial court must find by a preponderance of the evidence that it is in the child's best interest to terminate parental rights. *In re B.B.*, 386 Ill. App. 3d 686, 699 (2008). In doing so, the trial court must consider the following factors:

> "(a) the physical safety and welfare of the child, including food, shelter, health, and clothing;
>
> (b) the development of the child's identity;
>
> (c) the child's background and ties, including familial, cultural, and religious;
>
> (d) the child's sense of attachments, including:
>
>> (i) where the child actually feels love, attachment, and a sense of being valued (as opposed to where adults believe the child should feel such love, attachment, and a sense of being valued);

(ii) the child's sense of security;

(iii) the child's sense of familiarity;

(iv) continuity of affection for the child;

(v) the least disruptive placement alternative for the child;

(e) the child's wishes and long-term goals;

(f) the child's community ties, including church, school, and friends;

(g) the child's need for permanence which includes the child's need for stability and continuity of relationships with parent figures and with siblings and other relatives;

(h) the uniqueness of every family and child;

(i) the risks attendant to entering and being in substitute care; and

(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3 (West 2020).

¶ 26 The trial court held a best interest hearing on July 16, 2021, and found on August 26, 2021, that it was in the best interest of the children to terminate respondent's parental rights. Counsel suggests the possible argument that the trial court's best interest finding was insufficient as it did not explicitly address the statutory factors in its ruling. However, counsel maintains that there is no arguable merit in this argument as the trial court's ruling demonstrates that there was evidence in the record to support its findings.

¶ 27 At the time of the best interest hearing S.S. and W.L. had been removed from the care Angelica and Maynor F. after a DCFS investigation related to a day care operation the they were operating out of their home. In the meantime, they had been placed with Cristal T., and Mitchell Z. While the investigation was still ongoing, DCFS had made it clear to S.S. and W.L.'s caseworker that the result of the investigation would be that abuse was indicated. As a result, S.S.

and W.L. would not be returned to the F's. However, Cristal T., and Mitchell Z. declined to seek adoption of S.S. and W.L. as they were already caring for the four other children. At the time of the best interest hearing a permanent placement for S.S. and W.L. had not yet been found, but at the August 26, 2021, ruling they had been placed with a new foster family. No evidence was heard as to how the children had bonded with the new family.

¶ 28     As for M.L., N.R., I.G., and L.G., the testimony and best interests report indicated that Cristal T. and Mitchell Z. provided for the children's needs. The children had bonded with their foster parents and had ties to their community through their school and activities. The children all loved their mother but understood it was in their best interests to stay with Cristal T. and Mitchell Z. L.G. expressed that she wished to stay with Cristal.

¶ 29     In making its ruling, the trial court found that the prospect of unification was minimal, and the denial of the petitions would unreasonably prolong the children's time in care. M.L., N.R., I.G., and L.G. had bonded with their foster parents, and their needs were taken care of. These findings, which are supported by the evidence, align with factors, (a), (b), (d), and (g).

¶ 30     As to S.S. and W.L. the trial court found that while their placement had been disrupted, finding a permanent adoptive home was still in their best interest. The lack of an immediate adoptive placement does not preclude a finding that the termination of respondent's parental rights was in the best interests of the children. "In termination-of-parental-rights cases, often the trial court is left without a perfect solution, and the court must choose what in its judgment is the best alternative. It may be in a child's best interest to have his parents' parental rights terminated, even if no adoptive candidate exists." *In re J.R.*, 342 Ill. App. 3d 310, 322 (2003). " '[T]he child[ren's] interest in a loving, stable[,] and safe home environment' might best be served by 'freeing [them] for adoption,' even if no one had offered, as of yet, to adopt them." *In re F.P.*, 2014 IL App (4th)

140360, ¶ 92 (quoting *In re D.T.,* 212 Ill.2d 347, 363-64 (2004)). "Although 'the current availability of an adoptive home is one [important] consideration[ ]' in the best-interest determination, this court has observed that '[i]t may be just as important to free children from continued involvement with a [parent] whose chaotic and disruptive lifestyle is a detriment to their welfare.' " *In re J.B.*, 2019 IL App (4th) 190537, ¶ 37 (quoting *In re B.S.*, 317 Ill. App. 3d 650, 665 (2000), *rev'd on other grounds by*, *In re R.C.*, 195 Ill. 2d 291, 304 (2001)).

¶ 31    In light of the circumstances, particularly respondent's failure to engage in the necessary psychiatric treatment for her mental health, and despite the lack of a permanent placement, we do not believe that any non-frivolous argument could be advanced that the State failed to prove by a preponderance of the evidence that the termination of respondent's parental rights was in the best interest of S.S. and W.L. Accordingly, we agree with counsel that there is no issue of arguable merit regarding the trial court's best interest findings.

¶ 32    Counsel then suggests three potential procedural issues. The first is that the trial court erred in denying respondent's motion to transfer venue to Lake County.

¶ 33                                3. *Forum Non Conveniens*

¶ 34    At the third permanency review hearing, respondent's trial counsel made an oral motion to transfer the case to Lake County, arguing that respondent lived in Waukegan, several of the children's foster placements were in Waukegan with the rest in Cook County, and the psychological evaluation had been performed in Cook County. The trial court denied the motion as untimely.

¶ 35    A trial court's denial of a *forum non conveniens* motion lies within the trial court's sound discretion and will not be reversed unless it can be shown that the trial court abused its discretion. *Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723, 742, (2005. The factors to be considered

when ruling on a motion for *forum non conveniens* include: "the availability of an alternate forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties." *Torres v. Walsh*, 98 Ill. 2d 338, 351 (1983). Additionally, a *forum non conveniens* motion must be filed "not later than 90 days after the last day allowed for the filing of that party's answer." Ill. S. Ct. R. 187 (eff. Jan 1, 2018).

¶ 36    Although respondent and the children may have no longer been located in Winnebago County, several of the DCFS caseworkers and supervisors who would be called as witnesses were located there. Additionally, given the length of time the case had been ongoing, the motion was made well beyond the 90-day limit for such a motion. Accordingly, we agree with counsel that there is no issue of arguable merit as to this issue.

¶ 37                                    4. Untimely Exhibits

¶ 38    Counsel next suggests and rejects the argument that the trial court improperly allowed the February 19, 2021, unfitness hearing to move forward when some of the State's exhibits may have been untimely disclosed. At the hearing the State sought to introduce several family service plans dated January 16, 2019; July 1, 2019; December 26, 2019; June 15, 2020; November 9, 2020. Respondent's trial counsel objected to the admission of all but the July 1, 2019, plan on the basis that they had only been filed two days prior. The State maintained that the exhibits had simply been re-filed and that the exhibits were already in the record. The trial court initially overruled the objection and allowed the State's examination to continue. At the conclusion of that day's hearing respondent's counsel renewed their objection and the court indicated it would reserve judgment on the issue and allow additional cross examination at the next hearing date of April 9, 2021.

¶ 39    At the April 9, 2021, hearing the trial court ruled that respondent's objection as to untimeliness was now moot as counsel had now had several weeks to review the services plans and would be allowed cross examination as to their contents. The State continued to maintain that the exhibits were already in the record.[3] Accordingly, there was no timeliness issue and therefore no issues of arguable merit as to this point.

¶ 40                          5. Admissibility of Evidence

¶ 41    Finally, counsel posits the argument that it was error to allow testimony regarding respondent's visitation with the children, from a witness who lacked first-hand knowledge of the visitation.

¶ 42    At the February 19, 2021, unfitness hearing Andrea Hernandez testified that she was a foster care case manager at Children's Home and Aid Society. She testified regarding respondent's visits with S.S. and W.L. She indicated that her information was derived from discussions she had with case aides who had observed the visitation or from Chloe Howaniec, another foster care case manager, who also did not observe the visitations and got her information from case aides. Trial counsel objected to this testimony on the basis that Hernandez did not have firsthand knowledge of the visitations. The trial court overruled the objection on the grounds that her lack of firsthand knowledge went towards the weight afforded to her testimony, not the admissibility. Upon further examination, Hernandez testified that she had access to the case aides' notes regarding the visitation.

---

[3] Appellate counsel maintains that at the May 6, 2021, hearing, trial counsel admitted to having received the service plan exhibits in 2018 or 2019. However, trial counsel was addressing a CD with a packet of indicated reports from DCFS.

¶ 43    Counsel argues that section 2-18(4)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/2-18(4)(a) (West 2020)) allows for the admission of Hernandez's testimony, and that the trial court's ruling that her lack of firsthand knowledge goes towards the weight to be afforded her testimony. Section 2-18(4)(a) provides:

"Any writing, record, photograph or x-ray of any hospital or public or private agency, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. * * * All other circumstances of the making of the memorandum, record, photograph or x-ray, *including lack of personal knowledge of the maker, may be proved to affect the weight to be accorded such evidence, but shall not affect its admissibility*." (Emphasis added.) *Id.*

While we agree with counsel's assertion that this issue does not contain arguable merit, we disagree with this reasoning. Section 2-18(4)(a) addresses records, writings, photograph or x-ray, or memorandum, which Hernandez's testimony is not. Therefore, her testimony was hearsay.

¶ 44    However, the content of her testimony (*i.e.,* that respondent would sometimes behave inappropriately during visitations with S.S. and W.L. by not paying attention to them, passing notes, or arguing with case aides) is contained within the family service plans, best interest reports, and permanency hearing reports already admitted into the record. "[E]rroneous admission of hearsay evidence is harmless error where it is merely cumulative of other, properly admitted,

evidence in the record" *In re Zariyah A.*, 2017 IL App (1st) 170971, ¶ 90. As Hernandez's testimony was merely cumulative of other properly admitted evidence, the admission of her testimony was harmless error, and no issue of arguable merit exists as to this point.

¶ 45    In conclusion, after examining the record and motion to withdraw, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant counsel's motion to withdraw, and we affirm the judgment of the circuit court of Winnebago County finding respondent unfit and terminating her parental rights.

¶ 46    Affirmed.